[Civ. No. 91. Fourth Appellate District.—April 7, 1930.]

A. DELLA, Respondent, v. THE HOME BANK OF PORTERVILLE et al., Appellants.

Max B. Jamison for Appellants.

Waldo E. Burford for Respondent.

MARKS, J.—Respondent brought this action to recover the sum of $505.75 from appellants. It is based on a judgment rendered January 24, 1927, against appellant R. A. Shepard, doing business under the name of Shepard Bros. and Shepard Bros. Meat Market. Execution was issued and served on the Home Bank of Porterville and returned unsatisfied.

On and prior to April 20, 1926, the appellant Shepard conducted a meat market in the city of Porterville, California. The business venture was a failure. Besides the account on which the judgment of January 24, 1927, was rendered, he owed respondent $61.20 and owed the appellant bank $3,625 evidenced by three promissory notes. There were also a number of accounts due to other creditors. Shepard was insolvent on and after March 5, 1926.

On March 5, 1926, Shepard gave the appellant bank a bill of sale to twenty head of steers and fifteen head of stock cattle located in a pasture on a ranch leased and occupied by him. On the same day the bank wrote Shepard a letter agreeing to sell the cattle and credit the net proceeds upon his notes. It did not take possession of the cattle. Some were butchered by Shepard and others he sold to a third party. On April 20, 1926, the bank sold the remaining cattle for $1284.94, which money it retained and credited Shepard's

notes with $1300 in accordance with a verbal promise made to Shepard so to do.

On March 24, 1926, Shepard gave respondent the following bill of sale: ''I have this day sold to A. Della all hides and tallow I have in my hide vat and those that may accumulate until I have paid him (A. Della) the sum of $495.00.''

Della did not take possession of the hides or tallow, but subsequently sold the hides for $284.20. Before this money was paid to Della it was taken under execution by another creditor of Shepard's and respondent received no part of it.

Just prior to April 14, 1926, a notice of intention to place a chattel mortgage on the furnishings and fixtures in the meat market in favor of one of the creditors, not a party to this action, was recorded in the office of the county recorder of Tulare County. On April 15, 1926, there was recorded in the same office a notice that Shepard had sold to the Home Bank of Porterville all his stock in trade, furniture, furnishings and fixtures in the meat market and fixing the Home Bank of Porterville and 9 o'clock A. M. on April 23, 1926, as the time and place of consummating such sale. A bill of sale transferring to the bank the property described in the notice was acknowledged by Shepard on April 14, 1926, and was recorded on April 16, 1926.

On April 20, 1926, there was a meeting of some of Shepard's creditors which resulted in a written agreement which was signed by some of those participating in the meeting, including the appellant bank, by the terms of which the attempt to mortgage the market was abandoned and its sale to the bank approved, conditioned upon the bank's agreement to dispose of the meat market and its prorating the receipts therefrom among the creditors, which the bank proceeded to do. The cattle were not mentioned in this transaction and the bank did not place any portion of the money received from their sale in this creditor's fund, but did participate as a creditor in its distribution of funds derived from the sale of the market. Respondent did not attend the creditors' meeting and did not sign the creditors' agreement. He testified that he did not know of this agreement and did not know of the sale of the cattle by Shepard or the bank until about April 28, 1926. He did know that the bank had taken over the meat market and filed his bill for $61.20 with the attorney for the bank and received two dividends

totaling $13.77 on this bill. He did not file the bill involved in this case with the bank or its representatives and received no payment upon it.

In accordance with the foregoing facts the trial court found that at the time of the attempted sale of the cattle to the bank they were in the possession of Shepard and that the sale was void as against other creditors, for the reason that there was no immediate and continued change of possession of the cattle from Shepard to the bank as required under the provisions of section 3440 of the Civil Code. Judgment was rendered in favor of respondent against both appellants.

There is no question in this case that there was no immediate or continued change of possession of the cattle from Shepard to the bank and that the attempted sale to the bank was fraudulent and void as to the other existing creditors of Shepard. The attempted sale must be treated as though it had never taken place and the bank must be regarded as holding the money it received from the sale of the cattle, in trust for the benefit of the creditors of Shepard. (*Allee* v. *Shay*, 92 Cal. App. 749 [268 Pac. 962].) In the case of *Ohio Electric Car Co.* v. *Duffet*, 48 Cal. App. 674 [192 Pac. 298, 299], it was held as follows:

"It has been held (*First Nat. Bank* v. *Maxwell*, 123 Cal. 360 [69 Am. St. Rep. 64, 55 Pac. 980]) that, so far as existing creditors are concerned, the title and ownership of the property conveyed with intent to defraud creditors remains in the fraudulent grantor as fully as though no transfer had been attempted, and the transfer being void as against them, a creditor may seize and sell the property under execution, and the sheriff's deed thereto transfers the legal title itself, and not a mere equity. Under such circumstances, then, in so far as this creditor was concerned, the property transferred was yet the property of its debtor. The creditor chose in this action to treat Josephine Duffet as a trustee of said property, holding for its debtor for the benefit of his creditors. In doing this it had the plain right to follow the trust property, regardless of the form in which it was found. It is quite immaterial in this equitable action whether the property was in the form of the house originally transferred, or whether it had been converted into improvements upon another house owned by Josephine Duffet. This

being an equitable action in which Josephine Duffet is sought to be held as a trustee, equity will follow the trust funds wherever they may be found.''

To the same effect is the case of *Henderson* v. *D. S. Denehy Mercantile Co.*, 48 Cal. App. 41 [191 Pac. 558].

The appellant bank attempts to justify its use of the money received from the sale of the cattle and its application on Shepard's notes under the provisions of section 3054 of the Civil Code, which provides as follows: ''A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of his business.''

This contention cannot be maintained, as the very act under which the bank secured possession of the money for the cattle which it sold is the one held void in this action. As we have seen, the only right of possession of the money the bank had was as trustee for the benefit of the creditors of Shepard. Section 3054 of the Civil Code cannot be used to nullify the provisions of section 3440 of the same code.

Judgment affirmed.

Barnard, Acting P. J., and Strother, J., *pro tem.*, concurred.